The LIFE INSURANCE COMPANY OF VIRGINIA, Appellant,

v.

Leroy J. SHIFFLET, as Executor de bonis non of the Estate of Florence I. Shifflet, Deceased, Appellee.

No. 22549.

United States Court of Appeals Fifth Circuit.

April 21, 1966.

B. E. Hendricks, Hendricks & Hendricks, Miami, Fla., for appellant.

Wm. L. Gray, III, James E. Tribble, Blackwell, Walker & Gray, Samuel J. Powers, Jr., Miami, Fla., for appellee.

Before PHILLIPS,* RIVES, and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge.

In the district court, on a jury verdict, a Florida executor de bonis non of the estate of a beneficiary in a life insurance policy recovered judgment against the insurer on a policy issued to the husband of the deceased. The insurer appeals, and we affirm.

* Of the Tenth Circuit, sitting by designation.

The decision turns upon the correct construction and application of Florida insurance statutes as changed in 1959, a function more properly, and more finally, belonging to the Courts of that State. The suit originally was brought in the State court, but the Company, as it had a right to do, invoked diversity jurisdiction. Thus, as so often happens, a federal court is brought to the task of arriving at a considered judgment as to what the State courts would have held had they first been presented with the opportunity.

Prior to October 15, 1959, this case would have presented no difficulty. Up until that time, the law of Florida was clearly to the effect that a representation by an insured in an application for life insurance, whether of fact or opinion, would not void a policy unless made with conscious intent to deceive, a matter for the decision of the jury unless the evidence admitted of no other conclusion, Metropolitan Life Insurance Company v. Fugate, 5 Cir., 313 F.2d 788.

Effective, as to the question here presented, October 15, 1959, Florida enacted an Insurance code. It is composed of 453 printed pages and known as Chapter 59–205 of the General Laws of 1959. Section 458, Chapter 17 of the Act, entitled "The Insurance Contract", now appears as Sec. 627.01081, Florida statutes F.S.A., and deals with representations in insurance applications. It will be set out in the margin.[1] Section 481,

Chapter 18, entitled "Life Insurance Policies and Annuity Contracts" now appears as Section 627.0203, Florida statutes. It will be set out in the margin.[2]

We assume that in the exercise of state power to regulate the insurance business the Florida legislature had the authority, if it so desired, to relieve the companies of any business hazard caused by the bona fide factual mistakes of their applicants, and, at the same time, load that burden on those who apply and pay for policies in good faith. We have been presented with no legislative history or other competent information on which to base any notion of legislative intent. We suppose there was none to offer.

At any rate, invoking these statutes, the appellant insists that if an applicant for a life policy makes untrue statements in response to material questions of fact then the company may void the policy, regardless of good faith, lack of fraud, or absence of a conscious intent or design to conceal or mislead.

The limited number of Florida court decisions handed down since 1959 either withhold clear support for the company contention or else point in the other direction.

■ We begin with the premise that the policy, if valid, was in force at the death of the insured. The designated premium had been paid. On the insurer, therefore, rested the burden of establishing any defense in avoidance of payment.

1. "627.01081 Representations in applications.—All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

   (1) Fraudulent; or

   (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

   (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the.

same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

2. "627.0203 Entire Contract.—There shall be a provision that the policy, or the policy and the application therefor if a copy of such application is endorsed upon or attached to the policy when issued, shall constitute the entire contract between the parties, and that all statements contained in the application shall, in the absence of fraud be deemed representations and not warranties."

These are the facts as reflected by the jury verdict:

In the Spring of 1963, Earl C. Shifflet was a resident of Miami, Florida, where he had lived for eighteen years. He was fifty years old, a taxi driver, a veteran of World War II, five feet and four inches tall, weighed 167 pounds, and was a friend of Robert A. Stickel, of Lynchburg, Virginia, an agent of the appellant insurance company. While on a visit to Lynchburg, Shifflet placed with Stickel an application for an ordinary life policy in the principal sum of ten thousand dollars, naming his wife, Mrs. Florence I. Shifflet, beneficiary. The Company had no regularly retained medical examiner in Miami, but designated Dr. Homer A. Reese as its agent to conduct a medical examination of the applicant and to make the customary medical report. Dr. Reese for many years had been Mrs. Shifflet's personal physician. In that connection he had been personally acquainted with her husband.

After his death, the Insurance Company investigators found that Shifflet had been in a Miami Hospital in April, 1958, at which time he had an elevated blood pressure of 184 or 194/138. He complained of dizziness, had a fainting spell, and injured his leg slightly. He was treated in the emergency room and sent home. There was no proof that he was then told that he had high blood pressure.

Also after claim was filed, the Insurance Company learned that on March 5, 1962, the insured sought the services of Doctor Reese, reporting that he had had a dizzy spell. Upon examination, his blood pressure was 180/100. Medication was prescribed. Eight days later the pressure had been reduced to 130/90 and the medication was cut in half. On April 3, pressure stood at 160 or 170/90 and medication was continued. The doctor did not thereafter see Shifflet or treat him. At the trial, Dr. Reese flatly declined to testify that he told Shifflet in 1962 that he was suffering from high blood pressure.

Twelve months later, April 9, 1963, Dr. Reese examined Shifflet for the Insurance Company. He read to the applicant each question on the medical history form, wrote the answers given, and Shifflet affixed his signature. Shifflet did not mention the professional visits of 1962, and the Doctor said he did not then remember them. He conducted a busy general practice, seeing fifty or more patients a day. On April 9, 1963, Shifflet's blood pressure was 134/100. Doctor Reese wrote on the report form that the general physical condition of the applicant was good and that he was a "good risk".

The policy issued on April 16. On September 28, the insured died from the affects of a ruptured aorta, which is the main artery that distributes blood to the body organs. The pathologist who conducted a post mortem had no opinion as to how long the deceased had a degenerated condition of the aorta. He was of the opinion that high blood pressure was a contributing factor in his death. Medical proof further showed that aortic ruptures are known to occur when there is no high blood pressure.

These are the crucial questions propounded by and answers given to the medical examiner which Appellant contends invalidate the policy as being false and fraudulent replies to questions of material fact:

"Q. What physicians, including specialists, have you consulted during the past five years?

"A. None.

"Q. Have you ever had or been treated for: A. Heart disease, angina pectoris, palpitation, shortness of breath, high blood pressure?

"A. No."

As to the first question, the hospital emergency room episode had not occurred within the five year period. The consultation and treatment by Dr. Reese in 1962 took place well within that time. The experiences of 1958 and 1962 would have been quite sufficient to support an inference, had the jury accepted that

view, that Shifflet knew he had high blood pressure in 1958 and 1962 but falsely misrepresented that he did not. There was no testimony from any source that Shifflet had ever been told that he had high blood pressure. By its verdict the jury found that he did not know it or, at least, did not recall it, and consequently there was no intentional misrepresentation.

The evidence is undisputed that if the Company had known of the visits to the doctor it would have made further inquiry and that if it had known of the high blood pressure the policy either would have not issued at all or would have issued only under an increased premium rate. In other words, on this record, the applicant made clearly incorrect statements of fact on highly material matters, but he did not know they were incorrect.

■ The crucial portions of the most lucid charge to the jury will be set out in the margin.[3] From these will be seen the theory of the trial court that if the applicant did not know he had high blood pressure, or failed to recall it, then there was no misrepresentation, but if he falsely answered with knowledge of the falsity then there could be no recovery.

Does this correctly state the law of Florida? We think it does.

We note that the Florida Third District Court of Appeals on October 26, 1965, after the instant case was briefed here, decided Lamm v. Prudential Insurance Company of America, 179 So.2d 238. This litigation involved health insurance. The defendant insurance company declined to pay a claim on the son of the plaintiff on the contention that at the time the plaintiff applied for the policies she had knowledge that Robert had a

---

3. "This case turns entirely upon a question of knowing and false representation, if there was any. I commend to you that you examine the representations made in the application itself in the jury room and determine one by one whether they were knowingly made, knowing that they were false.

"The Court charged you that an insurance company is not bound to accept any risk that is offered. It may exercise its discretion and its judgment as to whether or not it will issue a policy of insurance upon the life of any particular individual. Before it reaches a conclusion as to whether or not it will issue a policy of insurance, it is entitled to have such information as it may desire in regard to the health, habits and physical condition of the applicant.

"It is the duty of an applicant for a policy of life insurance to answer truthfully the questions which he assumes to answer and which are to become a part of the application and of the insurance contract, if and when issued.

"You are instructed that if the insured, Earl C. Shifflet did not know that he had high blood pressure, then there was no misrepresentation and he cannot be held to have misrepresented his condition.

"If you find that the answer to the questions, or either of them, was false— that is, to Question 5-A or Question No. 2—and known by Earl Shifflet to be false when made, then I charge you that the plaintiff in such an instance cannot recover, and your verdict in such an instance, if that be the case, should be for the defendant.

"The Court charges you that the answer of the applicant, Earl C. Shifflet, to Question No. 2 and Question No. 5-A of the medical history part of the application forming a part of the policy issued on herein, are shown by the evidence in this case to have been material to the consideration of the acceptance of the risk by the defendant insurance company, and that, if you find from the evidence that the applicant Earl C. Shifflet falsely answered such questions with knowledge of the falsity when he applied for the policy here sued upn, your verdict should, if such be the case, be for the defendant. Let me repeat again what I said earlier. This case is one presenting sharply almost one issue. If the answers to these questions were material and they were false, then the insurance company under the policy would have a right to reject the payment.

"The question is: Were they made with knowledge on the part of Mr. Shifflet that they were false?

"The question is: When he signed these things which were in part untrue, as we know, and were material, was he acting without knowledge that he had high blood pressure; secondly, did he forget his visits to Dr. Reese and to the hospital, or did he not?"

heart murmur and that her failure to put the company on notice constituted material misrepresentations, omissions, and/or concealment of material facts which were material to the risk and hazard assumed by defendant. The plaintiff claimed that she had no knowledge of any such condition, that she made no material misrepresentations, omissions, concealment of facts, and if any statements were incorrect, *they were not made in bad faith*; and that, in fact, the defendant's agent filled out the application. The trial court rendered summary judgment for the defendant. The appellate court reversed with the comment "[t]he extent of the questions asked by the insurance agent, the correctness of the answers given by the plaintiff, and plaintiff's alleged misrepresentation, or *knowledge of the seriousness of the 'heart murmur'* (emphasis added), were disputed questions of fact to be resolved by a jury".

The Court then quoted with approval the discussion of misrepresentation, concealment, and breaches of warranty or condition appearing in 18 Fla.Jur. Insurance Sec. 455, which will be set out in the margin.[4]

The District Court of Appeals made no reference to the language of 627.01081 to the effect that "[m]isrepresentations, omissions, concealment of facts, and *incorrect statements* (emphasis ours) shall not prevent a recovery under the policy or contract, * * *". We are entitled to assume that the Court was well aware of its existence, nevertheless held as aforesaid.

In American Bankers Life Assurance Company of Florida v. Toth, (Fla.App. 1964) 165 So.2d 804, cert. den. Fla., 169 So.2d 389, a truck driver applied for a policy of insurance, pursuant to which the company's examiner came to his home at 6 P.M. the next day. The doctor completed parts 2 and 3 of the application and gave Toth a physical examination, spending fifteen to thirty minutes while so doing. Toth signed the application but the doctor did not know whether he read it before signing. The doctor found him in good health. The application stated that Toth had not seen any physician within the past five years. The facts were that two weeks prior to the date of the application Toth had visited a doctor, complaining of headaches, not feeling very well generally, and that he had had a dizzy spell several weeks prior to the visit. Moreover, Toth just a few weeks prior thereto had a physical examination at the hands of another doctor, who told him he was overweight and had a slight elevation in blood pressure. Toth developed fatal cancer within three months.

The Company contended that the incorrect answers of Toth voided the policy under Section 627.01081. The trial judge held that the burden was upon the insurer to show material misrepresentation *made in bad faith*. The Court of Appeals affirmed and the Florida Supreme Court denied certiorari.

A new and comprehensive insurance code was enacted in Georgia in 1960. Ga.L.1960, p. 289 et seq. Consequently, Section 56–2409 of the Georgia Code is identical to the provisions of Florida Code Section 627.01081. We find no cases decided by Georgia under the new section. Stare decisis in Georgia is of no assistance to us. For example, Section 2479 of the Code of 1926 provided: "Every application for insurance must

---

4. "In general, in suits on insurance contracts, if the evidence is susceptible of different inferences, the question of whether there has been misrepresentation, concealment, or a breach of warranty or condition, is one of fact, for resolution by the jury. Accordingly, where it is contended that the insured has misrepresented the condition of his health in applying for insurance or in securing reinstatement, and the evidence is not conclusive on the point, it is for the jury to resolve the question; and in so doing it is within their province to reject expert testimony and rely on lay evidence. Whether or not the insured falsely represented material facts that induced the insurer to issue policies solely on the strength of the insured's statements, without regard to an independent investigation made by it, is likewise a question of fact."

be made in the utmost good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy." Thus we find our own Court in 1964 holding, pursuant to prior Georgia decisions, that in Georgia it is not necessary to show any knowledge of falsity by the insured, it is only necessary that the applicant made a material representation which was untrue. Franklin Life Insurance Co. v. State Neon Sign Company, Inc., 5 Cir., 1964, 329 F.2d 456. This is diametrically opposed to the law as developed in Florida prior to the 1959 enactment.

We see no clear indication in any Florida precedent, before or since the enactment of the Code in 1959, that one who in good faith gives a mistaken answer of material fact may thereby lose the protection of the policy he has bought and paid for.

■ The Florida decisions indicate that mere incorrectness in an answer given in good faith, even as to a material fact, in an application for life insurance will not void the policy. It is our view that *Toth* and *Lamm* require that such statements must be knowingly made and that, therefore, the jury below was properly instructed.

■ There is a second wing to this appeal. After the Company learned that the deceased had not correctly answered the questions herein set forth it denied liability. It sent a check to the widow for the full amount of the premiums paid, noting on the face of the check that it was in "Full Settlement Policy 1008672 Shifflet". The widow endorsed the check and deposited it in her bank account. Appellant contends that this constituted a voluntary recision of the insurance contract, citing 29 Am.Jur., Section 412, Page 758. Mrs. Shifflet deposited the check on November 22, 1963. She died twenty one days later, without taking further action on the matter. The record is silent as to how long she was incapacitated before death. Whether there is an accord and satisfaction involves a question of fact to be determined by transactions and reasonable inferences therefrom. Miller-Dunn Co., Inc. v. Green, 154 Fla. 72, 16 So.2d 637 (1944). Since there was no proof of intent other than the deposit of the check twenty one days before death we conclude that the trial judge was not in error in declining to submit the issue of recision to the jury. Moreover, we think the holding was correct because the refund was no more than was required in any event. Hence, for lack of consideration, cannot be sustained, 3 Appleman, Insurance Law and Practice, Section 1691; National Life and Accident Insurance Co. v. Williams, 169 Miss. 604, 146 So. 455 (1933).

The Judgment is affirmed.