201 So.2d 715 (1967)
The LIFE INSURANCE COMPANY OF VIRGINIA, Appellant,
v.
Leroy J. SHIFFLET, As Executor De Bonis Non of the Estate of Florence I. Shifflet, Deceased, Appellee.
No. 36160.
Supreme Court of Florida.
May 31, 1967.
Rehearing Denied June 30, 1967.
*716 Hendricks & Hendricks, Miami, for appellant.
Blackwell, Walker & Gray, Miami, for appellee.
CALDWELL, Justice.
The United States Court of Appeals for the Fifth Circuit has certified to this court a question of law based upon facts stipulated and recited in its opinion.[1]
The question involves the construction of Section 627.01081, Florida Statutes, F.S.A., and conflicts, illusive or real, between the Lamm,[2] Toth,[3] Douglas[4] and Shifflet[5] decisions. The certificate is as follows:
"It appearing to the court that there is involved in this case a question or proposition of Florida law which is determinative of this cause, and that there are no clear controlling precedents in the decisions of the Supreme Court of Florida, there is hereby certified to the Supreme Court of Florida in accordance with Section 25.031, Florida Statutes, F.S.A. and Rule 4.61 of the Florida Appellate Rules, the following question of law based upon the following facts recited in the opinion of this court rendered April 21, 1966, and stipulated to by counsel for the parties hereto:
`STATEMENT OF THE FACTS
`These are the facts as reflected by the jury verdict:
`In the Spring of 1963, Earl C. Shifflet was a resident of Miami, Florida, where he had lived for eighteen years. He was fifty years old, a taxi driver, a veteran of World War II, five feet and four inches tall, weighed 167 pounds, and was a friend of Robert A. Stickel, of Lynchburg, Virginia, an agent of the appellant insurance company. While on a visit to Lynchburg, Shifflet placed with Stickel an application for an ordinary life policy in the principal sum of ten thousand dollars, naming his wife, Mrs. Florence I. Shifflet, beneficiary. The Company had no regularly retained medical examiner in Miami, but designated Dr. Homer A. Reese as its agent to conduct a medical examination of the applicant and to make the customary medical report. Dr. Reese for many years had been Mrs. Shifflet's personal physician. In that connection he had been personally acquainted with her husband.
`After his death, the Insurance Company investigators found that Shifflet had been in a Miami Hospital in April, 1958, at which time he had an elevated blood pressure of 184 or 194/138. He complained of dizziness, had a fainting spell, and injured his leg slightly. He was treated *717 in the emergency room and sent home. There was no proof that he was then told that he had high blood pressure.
`Also after claim was filed, the Insurance Company learned that on March 5, 1962, the insured sought the services of Doctor Reese, reporting that he had had a dizzy spell. Upon examination, his blood pressure was 180/100. Medication was prescribed. Eight days later the pressure had been reduced to 130/90 and the medication was cut in half. On April 3, pressure stood at 160 or 170/90 and medication was continued. The doctor did not thereafter see Shifflet or treat him. At the trial, Dr. Reese flatly declined to testify that he told Shifflet in 1962 that he was suffering from high blood pressure.
`Twelve months later, April 9, 1963, Dr. Reese examined Shifflet for the Insurance Company. He read to the applicant each question on the medical history form, wrote the answers given, and Shifflet affixed his signature. Shifflet did not mention the professional visits of 1962, and the Doctor said he did not then remember them. He conducted a busy general practice, seeing fifty or more patients a day. On April 9, 1963, Shifflet's blood pressure was 134/100. Doctor Reese wrote on the report form that the general physical condition of the applicant was good and that he was a "good risk".
`The policy issued on April 16. On September 28, the insured died from the effects of a ruptured aorta, which is the main artery that distributes blood to the body organs. The pathologist who conducted the post mortem had no opinion as to how long the deceased had a degenerated condition of the aorta. He was of the opinion that high blood pressure was a contributing factor in his death. Medical proof further showed that aortic ruptures are known to occur when there is no high blood pressure.
`These are the crucial questions propounded by and answers given to the medical examiner which Appellant contends invalidate the policy as being false and fraudulent replies to questions of material fact:
"Q. What physicians, including specialists, have you consulted during the past five years?
"A. None.
"Q. Have you ever had or been treated for:
"A. Heart disease, angina pectoris, palpitation, shortness of breath, high blood pressure?
"A. No."
`As to the first question, the hospital emergency room episode had not occurred within the five year period. The consultation and treatment by Dr. Reese in 1962 took place well within that time. The experiences of 1958 and 1962 would have been quite sufficient to support an inference, had the jury accepted that view, that Shifflet knew he had high blood pressure in 1958 and 1962 but falsely misrepresented that he did not. There was no testimony from any source that Shifflet had ever been told that he had high blood pressure. By its verdict the jury found that he did not know it, or, at least, did not recall it, and consequently there was no intentional misrepresentation.
`The evidence is undisputed that if the Company had known of the visits to the doctor it would have made further inquiry and that if it had known of the high blood pressure the policy either would have not issued at all or would have issued only under an increased premium rate. In other words, on this record, the applicant made clearly incorrect statements of fact on highly material matters, but he did not know they were incorrect.'

*718 "STATUTE INVOLVED

"The case involved the construction of Section 627.01081, Florida Statutes, F.S.A. dealing with representations in insurance applications, which Statute provides as follows:
`All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
(1) Fraudulent; or
(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.'

"HISTORY OF THE CASE
"The beneficiary, FLORENCE I. SHIFFLET filed claim for the face amount of the policy.
"The Appellant refused to pay the claim on the basis that SHIFFLET made clearly untrue and incorrect statements of fact on highly material matters in his answers on the application. The prepaid annual premium was returned to the beneficiary and by her retained.
"The beneficiary subsequently died on December 13, 1963.
"Suit to recover the proceeds of the policy was filed in the Circuit Court of Dade County, Florida, by the legal representative of the beneficiary's estate. The Appellant, invoking diversity jurisdiction, removed the cause to the United States District Court for the Southern District of Florida, Miami Division.
"The trial court charged the jury that if SHIFFLET made incorrect or untrue statements of facts on highly material matters but without knowledge of the falsity of such statements, or if he failed to recall the true facts to which the questions related there would be no misrepresentation, but if he falsely answered with knowledge of the falsity then there could be no recovery.
"The jury, upon the facts hereinbefore recited, returned a verdict for the appellee. Thereafter the defendant insurance company moved for judgment in accordance with directed verdict or in the alternative for a new trial. Following the denial of these post-trial motions the insurance company appealed on the ground that the trial court had erred in denying its motion for directed verdict and its motion for judgment in accordance with the directed verdict, or in the alternative for a new trial.
"On appeal the trial court's construction of the Statute was held to correctly state the law of Florida, and that mere incorrectness in an answer given in good faith and without knowledge of the falsity, even if it is a material fact, in an application for life insurance will not void the policy (359 F.2d 501, opinion rendered April 21, 1966).
"Appellant, on May 9, 1966, filed its Petition for Rehearing and other Relief, directing the Court's attention to the findings of the Court by the Honorable D.R. Smith, Circuit Judge of the Fifth Judicial Circuit of Florida, in and for Lake County, in the case of EDWIN C. DOUGLAS, Plaintiff vs. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant, in which case Judge Smith construed Section 627.01081 Florida Statutes, F.S.A. contrary to the decision of the Court; that *719 the referred to case was pending on appeal from said Circuit Court to the District Court of Appeal of the State of Florida, Second District, and that a decision of affirmance by said District Court of Appeal would result in a conflict with the decision in the case at bar, the Appellant requesting that the Petition for Rehearing be granted as the interpretation of the cited statutes is determinative of the cause, and that at the time of the filing of said Petition for Rehearing that there were no clear or controlling precedents in the decisions of the Supreme Court of the State of Florida nor in the various District Court of Appeals of the State of Florida, so that for the foregoing reasons that construction of the statute involved be certified to the Supreme Court of the State of Florida pursuant to the provision of Section 25.031 Florida Statutes, F.S.A.
"Subsequently, the District Court of Appeal for the Second District of Florida, rendered its decision in DOUGLAS vs. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, (opinion filed October 12, 1966, 191 So.2d 483, rehearing denied November 22, 1966), where on facts similar to the case at bar, that Court held that the obvious wording of Section 627.01081(2) Florida Statutes, prevents recovery for `incorrect statements' * * * `material to the acceptance of the risk'.
"By opinion dated January 4, 1967, the Court granted the Petition for Rehearing to the extent necessary to certify the construction of the referred to statute by the Supreme Court of Florida, under the facts and circumstances of this case.
"STIPULATED QUESTION
"WHETHER CLEARLY INCORRECT AND UNTRUE STATEMENTS TO QUESTIONS ON AN INSURANCE APPLICATION, MATERIAL TO THE ACCEPTANCE OF THE RISK OF THE CONTRACT, MUST BE GIVEN WITH KNOWLEDGE OF THE INCORRECTNESS AND UNTRUTH TO VITIATE THE POLICY UNDER SECTION 627.01081(2) FLORIDA STATUTES, F.S.A.?"
The Second District Court of Appeal, in the Douglas case, correctly ruled:[6]
"The obvious wording of the statute prevents recovery for `incorrect statements' * * * `material * * * to the acceptance of the risk. * * *'
"We believe the plain meaning of the quoted section should control the outcome of this decision * * *."
And in substance held an erroneous answer to a question on an insurance application, admittedly material to the acceptance of the risk of the contract, need not be given in bad faith to vitiate the policy under Section 627.01081.
The pertinent statute was enacted on October 15, 1959 and the Douglas decision is the first Florida Appellate Court opinion clearly settling the specific question here involved.
Inasmuch as we think the statute is unambiguous and is susceptible of but one interpretation we find there is no necessity for construction. We accord the statute its plain and obvious meaning and hold recovery under the policy is precluded if the misrepresentation is material to the acceptance of the risk or if the insurer in good faith would not have issued the policy in the terms it was issued.
We do not agree the Toth, supra, and Lamm, supra, decisions conflict with Douglas. In neither of those cases did the court treat the issue decided in Douglas and to be disposed of here.
We hold misrepresentations in an application for insurance, material to the acceptance of the risk, do not have to be made with knowledge of the incorrectness and untruth to vitiate the policy. This conclusion *720 appears to be in harmony with the general rule approved in other jurisdictions.[7]
The certified question in answered in the negative.
DREW, O'CONNELL and ERVIN, JJ., concur.
THORNAL, C.J., dissents.
NOTES
[1] 359 F.2d 501 (C.C.A.5th 1966).
[2] Lamm v. Prudential Ins. Co., 179 So.2d 238 (Fla.App.3rd 1965).
[3] American Bankers Life Assurance Co. v. Toth, 165 So.2d 804 (Fla.App.3rd 1964), cert. den. 169 So.2d 389 (Fla. 1964).
[4] Douglas v. Mutual Life Ins. Co., 191 So.2d 483 (Fla.App.2d 1966).
[5] Life Insurance Co. of Va. v. Shifflet, 359 F.2d 501 (5 Cir.1966).
[6] Douglas v. Mutual Life Ins. Co., 191 So.2d 483, 484 (Fla.App.2d 1966).
[7] E.g., Campbell v. Prudential Ins. Co., 15 Ill.2d 308, 155 N.E.2d 9 (1958); Lennon v. John Hancock Mutual Life Ins. Co., 339 Mass. 37, 157 N.E.2d 518 (1959); Manufacturers Life Ins. Co. v. Beardsley, 365 Mich. 308, 112 N.W.2d 514 (1961); Bushfield v. World Mut. Health & Acc. Ins. Co., 80 S.D. 341, 123 N.W.2d 327 (1963); Briggs v. United Services Life Ins. Co., 80 S.D. 26, 117 N.W.2d 804 (1962); Travelers Indemnity Co. v. American Cas. Co., 226 F. Supp. 354 (S.D.W.Va. 1964); All American Life & Casualty Co. v. Krenzelok, 409 P.2d 766 (Wyo. 1966).