Harold **WISSNER**, as father and next
friend of Jack David Wissner
et al., Plaintiffs,

v.

The **METROPOLITAN LIFE INSUR-
ANCE CO.**, Defendant.

No. 66–67–Civ.

United States District Court
S. D. Florida,
Miami Division.

June 30, 1967.

Loewenstein, Dunn & Johnson and
Thomas A. Horkan, Jr., Miami, Fla.,
for plaintiffs.

George W. Wright, Jr., of Scott, Mc-
Carthy, Steel, Hector & Davis, Miami,
Fla., for defendant.

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT AND
FINDINGS OF FACT AND CON-
CLUSIONS OF LAW**

ATKINS, District Judge.

This cause came on to be heard by the
Court pursuant to the defendant's mo-
tion for summary judgment. The Court,
having heard argument of counsel, con-
sidered the memoranda of law filed by
the parties in support of their respective
positions, and being otherwise duly ad-
vised in the premises of this action, en-
ters this order as supplemented by the
following findings of fact and conclu-
sions of law.

FINDINGS OF FACT

1. On November 29, 1960, the defend-
ant, Metropolitan Life Insurance Com-
pany, issued a life insurance policy num-
ber 607 118 485 PR to the insured, Mrs.
Ida Wissner.

2. The application for the aforesaid
insurance policy contained the following
answers to questions which were asked
of Mrs. Wissner by the agent for Metro-
politan Life Insurance Company, Ivan
Fisher, in connection with the complet-
ing of Part A of the application:

"Q. 19. Have you, the Applicant, or
any other Proposed Insured ever
had, or have you been told that
you or any of them have had or
been treated for, or has advice
been sought concerning:

\* \* \*

(j) Any disease of the lymph
glands, thyroid, or other glands;
or anemia, leukemia or other dis-
ease of the blood?

A. No.

Q. 20. Have you had health examinations or check-ups in the past 5 years:

(a) In the course of employment?

A. No.

Q. (b) Other than in the course of employment?

A. No.

Q. For both (a) and (b)?

Q. (i) Did you request examination because of Symptoms or ailments?

A. No.

Q. (ii) Was any treatment, change in living habits, further examination or consultation, suggested or advised?

A. No.

Q. 21. Have you had any electrocardiograms, X-rays, laboratory examinations, or other diagnostic tests within the past 5 years?

A. No.

Q. 22. Have you ever had a surgical operation, been a patient in or visited a hospital, clinic, dispensary or sanatorium for observation, examination or treatment of any condition or disease not described above?

A. Yes.

Q. (b) Have you consulted, or been examined or advised by any physician or practitioner within the past 5 years for any condition or disease not described above?

A. No.

Q. If answer to (a) or (b) is Yes, give reasons, name and address of each doctor and each hospital, and results.

A. 1952—Removal of skin cancer on nose. Dr. Claire Straith—Detroit Bolldless operation—no disability —complete recovery.

Q. 23. Have you any symptoms or ailments not described above?

A. No."

3. On November 5, 1960 Mrs. Wissner appeared in the office of Dr. George L. Rand, M.D., in order to complete Part B of the application for insurance which required a physical examination. Prior to conducting the physical examination, Dr. Rand propounded the following questions to Mrs. Wissner and recorded for the insurer the following answers given by Mrs. Wissner in response to the questions:

Q. "2. How much time have you lost from work, school, or normal activities in the past 2 years because of health?

A. None.

Q. "3. Have you ever had, or been told that you had, or been treated for, or sought advice concerning:

Q. "(j) Any disease of the lymph glands, thyroid, or other glands; or anemia, leukemia or other disease of the blood?

A. No.

Q. "4. Have you had health examinations or check-ups in the past 5 years:

Q. (a) In the course of employment?

A. No.

Q. (b) Other than in the course of employment?

A. No.

Q. "5. Have you had any electrocardiograms, X-rays, laboratory examinations, or other diagnostic tests within the past 5 years?

A. Yes.

Q. (If Yes, indicate which and give reasons, dates, name and address of each doctor and each hospital, and results.)

A. "Periodic papinicalou smears— Dr. H. Kraff, Miami Beach, Fla— all negative

Q. "7. Have you ever had a surgical operation, been a patient in or visited a hospital, clinic, dispensary or sanatorium for observation, examination or treatment of any condition or disease not described above?

A. Yes.

Q. If answer to (a) or (b) is Yes, give reasons, name and address of each doctor and each hospital, and results.

A. "For deliveries only. 1949–51 1954 Mt. Sinai Hosp. Miami Beach Fla.

Q. "8. Have you any symptoms or ailments not described above?

A. No."

4. When Mrs. Wissner had signed both parts of the application she certified in the instance of Part A that: "The foregoing statements and answers are true and complete" and in the instance of Part B she certified the following:

"I have read the foregoing answers before signing. They have been correctly written, as given by me, and are true and complete. There are no exceptions to any such answers other than as stated herein."

5. The record insofar as Mrs. Wissner's medical history is concerned, establishes the following material facts:

(a). Commencing in early July, 1960, Mrs. Wissner sought medical advice from Dr. Irwin H. Makovsky, a physician specializing in internal medicine, because of a swelling in the back of her neck.

(b). Dr. Makovsky first referred Mrs. Wissner to a radiologist, Dr. Richard D. Shapiro, who found no evidence of lymph node enlargements in her chest cavity and then referred her to the Southern Clinical Laboratory for a heterophile antibody test which proved negative for infectious mononucleosis. Dr. Makovsky then referred Mrs. Wissner to a surgeon, Dr. Rudolph Drosd, who reported a finding of "non-specific hyperplasia" (viz. a multiplication of tissue in the neck) after performing a biopsy of the swollen lymph gland of neck.

(c). Mrs. Wissner again visited Dr. Makovsky during the latter part of July, 1960 when she noticed swelling in her right groin. Dr. Makovsky, suspecting that Mrs. Wissner might have a malignant lymphatic disease because his examination revealed lymph node enlargements in the right groin, referred Mrs. Wissner to a specialist in hematology, Dr. Howard E. Lessner, whom Mrs. Wissner was told was a blood specialist.

(d). Dr. Lessner performed a physical examination of Mrs. Wissner which revealed a lump of swollen, abnormal and oversized nodes in Mrs. Wissner's right groin as well as a few small lymph nodes in the left groin and a small lymph node in the right posterior cervical area. A biopsy of the nodes located in the groin area was recommended which was performed on August 8, 1960, under Dr. Makovsky's direction. The biopsy revealed that Mrs. Wissner had Hodgkin's disease. A symptom of this disease is a generalized swelling of the lymphatic tissues throughout the body. Hodgkin's disease is fatal when it spreads.

(e). After physically examining Mrs. Wissner on August 15, 1960, Dr. Lessner advised Mrs. Wissner and Dr. Makovsky of his recommendation that she be admitted to a hospital for nitrogen mustard treatment. Mrs. Wissner was admitted on August 22, 1960 to Jackson Memorial Hospital and was discharged on August 24, 1960 after receiving two doses of nitrogen mustard. The face sheet of the hospital records revealed that Mrs. Wissner was diagnosed as having Hodgkin's Disease.

(f). Prior to making application for insurance with Metropolitan Life Insurance Company, Mrs. Wissner visited Dr. Lessner on September 5, September 13, October 4, 11, 18 and October 25, 1960. During some of these visits, Mrs. Wissner received injections of nitrogen mustard.

(g). On November 1, 1960, five days after signing Part A of the application for life insurance and four days prior to signing Part B of the appli-

cation, Mrs. Wissner visited Dr. Lessner for an injection of nitrogen mustard.

(h). Mrs. Wissner died on October 23, 1961 from Hodgkin's Disease.

6. Metropolitan Life Insurance Company was totally unaware of Mrs. Wissner's afflication with Hodgkin's Disease.

7. If Metropolitan Life Insurance Company had known of Mrs. Wissner's affliction of Hodgkin's disease, it would not have issued the subject insurance policy under any circumstances.

8. The record reveals that Mrs. Wissner, at the time of the execution by her of Part A and Part B of the insurance application, was mentally competent and was in possession of all of her mental faculties.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this suit by virtue of the fact that there is diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $10,000, 28 U.S.C. Section 1331.

2. Metropolitan Life Insurance Company is not liable under life insurance policy Number 607 118 485 PR because (a) the insurer has sufficiently demonstrated that the incorrect statements made by the applicant-insured, Mrs. Ida Wissner, were made in bad faith since they were made by her with knowledge that they were incorrect and because (b) the misrepresentations were material to the issuance of the policy. Life Insurance Co. of Virginia v. Shifflet, 359 F.2d 501, (5th Cir. 1966) (on certification to the Florida Supreme Court); Fla.Stat. § 627.01081, F.S.A. See also Douglas v. Mutual Life Insurance Company of New York, 191 So.2d 483 (Fla. App. 2nd Dist. 1966).

The Court, having entered its Findings of Fact and Conclusions of Law and being of the opinion that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law, hereby

Orders and adjudges that defendant's motion for the entry of a summary judgment in its favor is hereby granted. A final judgment shall forthwith be entered by the Court.