**ALLSTATE INSURANCE COMPANY,**
Appellant,

v.

**Albert WINNEMORE, Appellee.**

**No. 25096.**

United States Court of Appeals
Fifth Circuit.

June 23, 1969.

---

John W. Thornton, Miami, Fla., for appellant.

Ralph P. Ezzo, Miami, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant, Allstate Insurance Company, (Allstate), issued a total disability income protection insurance policy to appellee, Winnemore, on August 25, 1961. Winnemore was struck by a golf cart and seriously injured on May 5, 1962. Commencing on June 7, 1962, Allstate paid benefits under the policy through November 15, 1965, at which time it discovered that Winnemore had made what Allstate considered a material misrepre-

sentation in answering a question on the application for insurance coverage. Allstate filed this suit seeking rescission of the insurance contract, and Winnemore counterclaimed for benefits due under the policy.[1]

The trial court held that Winnemore was permanently disabled as a matter of law. The court then submitted to the jury the sole remaining question of whether Allstate should be allowed to rescind the contract. The jury returned a verdict for Winnemore, and judgment was entered in favor of Winnemore for benefits owing under the policy.

Allstate asserts that the trial court committed several errors. First, the company argues that the trial court erred in submitting the case to the jury because under Florida law equitable issues such as rescission must be tried to the court without a jury prior to jury deliberation on legal issues such as liability and amount of damages.[2] Allstate contends that since Florida procedure would have been "outcome determinative"[3] in the instant case, the trial court was required to decide the rescission question without submitting it to a jury. We do not agree. We think it unlikely that submitting the question of rescission to a jury is outcome determinative. There is no indication that the trial court would have granted rescission or would have been influenced and persuaded by matters not understood or credited by the jury. Conversely, nothing inherent in the submission of this case to a jury foreclosed granting rescission to Allstate. It is only a rare case where the outcome would probably be determined by whether or not the case is submitted to a jury.

■■ There is an even more compelling reason why we hold that this case was properly submitted to a jury. The "outcome determinative" consideration advanced by appellant is not the only criterion by which to determine whether state procedure must be followed. It must be remembered that a federal court sitting in a diversity case is more than an adjunct of the state in which it sits. Necessarily, it administers federal law and follows federal rules of procedure. Monarch Ins. Co. v. Spach, 5 Cir. 1960, 281 F.2d 401. Further, the Seventh Amendment's guarantee of right to trial by jury is a strong countervailing consideration to the Florida procedure urged by appellant. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The counterclaim brought by appellee arose out of the same facts and circumstances as the original suit for rescission. In such circumstances, the trial court did not err in submitting the entire case to the jury. Dairy Queen, Inc. v. Wood, supra; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Byrd v. Blue Ridge Rural Electric Coop., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

Despite our rejection of appellant's attempt to avoid a jury determination of the issues in this case, this case must be reversed because of errors by the trial court in its charge to the jury. The claimed ground for rescission of the policy was the alleged incorrect answer given by appellee to question 9.a. of the insurance application. Question 9.a. read as follows:

"If Disability Income insurance is now being applied for, is the total of all Disability Income indemnities carried

---

1. Allstate is incorporated and maintains its principal place of business in Illinois. Winnemore is a citizen of Florida. Since the value and amount in controversy exceeds $10,000, the parties are in federal court under the diversity of citizenship jurisdiction. Title 28 U.S.C., Sec. 1332.

2. Southwestern Life Insurance v. Gerson, 187 So.2d 63 (Fla.App.1966). This state case involved almost precisely the same contentions as appear before us in the instant diversity case.

3. Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

and applied for less than two-thirds of your average earnings from your occupation, during the past 12 months?"

Appellee, applying for disability benefits of $300 per month, answered "yes" to this question, thus indicating average earnings in excess of $450 per month. Allstate contends that this answer was either a fraudulent or accidental misrepresentation.[4]

The trial court quoted the question from the insurance application and charged:

> "Plaintiff claims that the defendant gave an incorrect answer to question 9.a. * * * And that the defendant answered 'yes' to this question when he knew that such answer was false."

The court further stated that the only issues for the jury to determine were as follows:

> "1. Whether or not the defendant Winnemore made a *false* statement in answer to question No. 9.a. on the application for insurance;
>
> "2. If you find the statement was *false*, you should then determine whether the statement was either (1) fraudulent; or (2) material to the acceptance of the risk or to the hazard assumed by the insurer; or (3) the insurer in good faith would either not

have issued the policy or contract or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer.

> *       *       *       *       *

> "The word *'fraudulent'* means that the statement was falsely made or caused to be made with the intent to deceive or cheat." (Emphasis added)

As cases decided since the trial below have made clear, the court's charge did not adequately reflect Florida law dealing with misrepresentations in insurance applications. The *Erie* question involved is interpretation of the Florida statute, F.S.A. 627.01081, quoted in the margin.[5]

In response to this court's certification under the Florida statute and rule, F.S.A. 25.031 and Florida Appellate Rule 4.61, 32 F.S.A., the Florida Supreme Court held that "misrepresentations in an application for insurance, material to the acceptance of the risk, do not have to be made with knowledge of the incorrectness and untruth to vitiate the policy." Life Insur. Co. of Virginia v. Shifflet, 201 So.2d 715 (Fla.1967).[6] Since *Shifflet*, this Court has had occasion to follow and apply its interpretation of F.

---

4. It is undisputed that after deduction of expenses of doing business, cost of goods sold and other final accounting deductions, appellee in fact had no earnings and was principally supported by his parents.

5. F.S.A. 627.01081 reads as follows:
   "All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
   "(1) Fraudulent; or
   "(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

"(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

6. The course of *Shifflet* before this Court appears as follows: 359 F.2d 501, 5 Cir. 1966, (original decision); 370 F.2d 555, 5 Cir. 1967, (rehearing granted and certification of Florida Supreme Court); and 380 F.2d 375, 5 Cir. 1967 (Per Curiam reversal based on the answer of the Supreme Court of Florida to the certified question.)

S.A. 627.01081 in several cases including McDonell v. New England Mutual Life Insur. Co., 5 Cir. 1967, 380 F.2d 983, and Wissner v. Metropolitan Life Insur. Co., 5 Cir. 1968, 395 F.2d 204.

■ The court's charge is clearly susceptible to the interpretation that an applicant for insurance must *fraudulently* give an incorrect answer before the insurance company is entitled to rescission. This is so because the word "false", to the lay mind particularly, has a connotation of deception or fraud. It will be necessary for the court to use some other word to describe Allstate's allegation concerning Winnemore's answer. "Untrue" would be more appropriate and less misleading than "false". "Untrue" is a neutral term and lacks the connotation of deliberate deception implied by "false". The trial court may charge the jury in any fashion it elects, so long as it is made clear that an incorrect answer, even innocently made, will vitiate the policy if it is material to the risk. The jury must not be left with the impression that the applicant must deliberately falsify or misrepresent before the insurance contract may be rescinded.

Further, the court misstated appellant's argument in charging that Allstate had alleged that defendant *knew* that his answer was false. It was Allstate's position at trial, and entirely consistent with Florida law as developed in *Shifflet*, that any misrepresentation, whether knowing or innocent, vitiates the insurance contract.[7]

We conclude that the jury may well have been misled into thinking that it needed to find a knowing misrepresentation by Winnemore in his application in order to rule for Allstate. The instructions were prejudicial to Allstate and require reversal.

■ Appellant not only urges that it is entitled to a new trial, but argues that the evidence is uncontradicted that Winnemore made a misrepresentation in his answer to question 9.a.[8] There is no question that Winnemore represented his earnings to be at least $450 per month by his affirmative answer to question 9.a.[9] There is also no question that his net income for the period averaged zero dollars per month or less. Winnemore claims that he interpreted "earnings" to mean gross receipts from business, and he told the insurance agent that he was doing between $6,000 and $8,000 worth of business per year, a figure which would be in excess of $450 per month. If "earnings" can only mean net income or take home pay, it is clear that Winnemore misrepresented his income status on the insurance application, and we should reverse and hold for Allstate. However, the term "earnings" is not defined as simply as Allstate believes. On direct examination, Allstate's expert defined earnings as net take-home compensation without deductions for social security and withholding tax. On cross-examination, however, he stated that earnings could be considered to mean "gross earnings". The record is not sufficiently clear for us to say that the term "earnings" as used on insurance applications means net take-home pay as a matter of law.

We agree that *Shifflet* permits rescission for even an innocent misrepresenta-

---

7. Allstate relied on Douglas v. Mutual Life Insur. Co. of New York, 191 So.2d 483 (Fla.App.1966), a decision of the Florida District Court of Appeals, Second District. The holding of Douglas was expressly approved by the Florida Supreme Court in *Shifflet*, 201 So.2d 715, at 719. *Douglas* triggered the granting of rehearing and the certification by this Court in *Shifflet*, 370 F.2d 555.

8. There can be no controversy over whether the answer to question 9.a. was ma-

terial to the risk within the terms of the Florida statute. The amount of earnings of a prospective insured under a disability policy clearly is material to the risk covered by that policy.

9. We do not agree with appellee's suggestion that the policy never directly calls for an estimate of average earnings. Question 9.a. clearly calls for a statement of whether earnings were above a certain figure.

tion, but we think it is possible that if Winnemore did not know or could not be expected to know the meaning of "earnings" on the insurance application, he did not make a misrepresentation. The meaning of the term is a matter for retrial. If in fact "earnings" can mean only net take-home pay, then Allstate will be entitled to judgment. Life Ins. Co. of Va. v. Shifflet, supra.

■ Allstate also alleges as error the trial court's failure to exclude from evidence testimony regarding various settlement offers made by Allstate. Allstate argues that the trial court committed an even more grievous error when it answered questions from the jury regarding dates of the settlement offers while the jury was deliberating. The rule in Florida is that settlement offers made while a controversy is pending are inadmissible and, if admitted, are prejudicial. Mutual Ben. Health & Accident Ass'n v. Bunting, 133 Fla. 646, 183 So. 321 (1938); City of Coral Gables v. Jordan, 186 So.2d 60 (Fla.App. 1966). The issue before us is whether the settlement offers were made by Allstate before there was a controversy between the parties and, therefore, admissible or whether they were made during the controversy between the parties and should have been excluded.[10]

■ The judge informed the jury that settlement offer dates were October

18, 1965; November 16, 1965 and December 20, 1965. The October date precedes by approximately a month the date of Allstate's last payment to Winnemore, and we think it clearly preceded any controversy between the parties and is, therefore, admissible. The November date is one day after the final check was sent to Winnemore. We think that the record indicates no controversy at this time [11] and that evidence of this settlement offer is also admissible.

■ Giving to the jury the December 20, 1965, date was plain error. The record does not support an inference that a settlement offer was made on this date. The testimony shows only that Winnemore talked with various agents of the company concerning the non arrival of his mid-December check. There is no proof that the company made a settlement offer in December.[12] Evidence of settlement offers made by the company in October and November of 1965 will be admissible on the retrial of this case.

For the reasons delineated above, we reverse and remand for a new trial in light of the principles laid down by the Florida Supreme Court in Life Ins. Co. of Va. v. Shifflet, supra, and applied by this Court in *Shifflet*, supra, *McDonell*, supra, and *Wissner*, supra.

Reversed and remanded.

---

10. The reason for the rule against admitting settlement offers made during a controversy is that a party will be reluctant to settle if he fears that his offer may later be admitted for all practical purposes as an admission of liability. The law wishes to encourage settlement over litigation. Obviously, this policy argument cannot be invoked unless a controversy is pending between the parties. Any settlement offers by Allstate made prior to the issue over Winnemore's answers to the application questionnaire could be interpreted as merely attempts to reduce the amount of payments they would eventually have to make to Winnemore, because of his incontestable total disability. These early offers need not be construed as an effort to avoid litigation.

11. The last payment to Winnemore was made on November 15, 1965. It would be incredible if the very next day the company had suddenly reviewed Winnemore's application, found that he made misrepresentations and offered to settle the "controversy" which Winnemore could not yet have known existed.

12. On retrial, it may be shown that a settlement offer was made on this date. We express no view on whether evidence of such an offer would be admissible in light of this opinion. We do note, however, Winnemore testified without contradiction that as late as mid-December he did not know the company was considering stopping payment on the policy.