**DISPOSABLE SERVICES, INC.,**
Plaintiff-Appellee,

v.

**ITT LIFE INSURANCE COMPANY OF NEW YORK, Defendant-Appellant.**

No. 71–2258.

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1971.

Rehearing Denied April 13, 1972.

Robert E. Venney, Gunn & Venney, Miami, Fla., for defendant-appellant.

Herbert L. Heiken, Martin Levinson, Miami, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and GOLDBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellee, Disposable Services, Inc., brought this Florida diversity action as owner and beneficiary, of an insurance policy issued by ITT Life Insurance Company of New York on the life of Samuel Lee Britt, secretary of appellee corporation, after refusal by ITT to pay the proceeds following the death of Britt. The case was tried to a jury. Both parties moved for a directed verdict and at the close of all the evidence, the Court directed a verdict in favor of plaintiff, Disposable Services, Inc. We reverse.

In November 1969, Britt applied to ITT for a policy of life insurance in the amount of $75,000 and designated Dis-

posable Services, Inc. as owner and beneficiary. In the written application Britt's answers to questions therein indicated that he was in good health, and that he had no physical or mental disorder. He stated in the application that the only time he had consulted a physician in the preceding five years was for treatment of a bee sting; that the only surgical operation he had undergone was an appendectomy in 1954; that he had never had, or had been advised to have, any x-rays or other tests with the exception of a chest x-ray when he was in the United States Army in 1952; and that he had never been told that he had kidney stones or any kind of kidney disease, tumors or cancer. Britt submitted to a medical examination by a physician designated by ITT. The application for insurance was approved by ITT on December 11, 1969, and shortly thereafter Policy No. 21576, dated December 9, 1969, was mailed to Disposable Services in Florida. A clause in the policy provided that the policy would not take effect until "delivered and the first premium paid during the lifetime of the insured."

On or about the first of January 1970, Britt began experiencing discomfort and pain in his lower back. At about this time he also suffered a weight loss. On February 3, 1970, Britt consulted Dr. Henry H. Bryant relative to his complaints. The doctor examined him and found a tenderness over the kidney area. He informed Britt that he thought that a kidney stone was the cause and that this would require hospitalization for further examination. Two days later, on February 5, 1970, Britt entered the hospital. On February 6, x-rays were made which showed obstructions in the kidney and colon. Britt was informed at that time of these findings as well as of the probability that he would lose his kidney, and he agreed to surgery. On February 8, Britt knew that cancer of the colon was very likely.

On February 9, 1970, ITT received a check to its order drawn by Disposable Services, and signed by Britt and an-

other officer of the corporation, in the sum of $558.16, representing the first premium payment on the insurance policy. The check for payment was dated February 5 and apparently mailed on or about that date. The check was deposited for collection by ITT on February 10 and paid by the bank on February 13.

On February 10, Britt underwent surgery at which time it was definitely established that he was suffering from cancer which had spread through the abdomen and was obstructing the kidney and colon. On February 11, Britt was told that he had a tumor and that his kidney had been removed. Either on that day or shortly thereafter Britt was informed that the tumor was malignant. Britt died on May 24, 1970, as a result of the malignancy.[1]

In directing a verdict for appellee, the District Judge was of the opinion that inasmuch as the policy did not contain a specific clause requiring that the insured be in good health at the time the policy became effective, Britt was under no duty to inform ITT of the change in his physical condition, and absent that duty, plaintiff was entitled to recover. We do not agree with the Trial Court.

Under the terms of the contract, the policy was not to take effect until the first premium was paid. Much controversy exists over two questions, first, whether Britt knew he had cancer prior to the time of the first premium payment and second, the actual date of the premium payment—ranging, according to the parties' contentions, anywhere from February 5, the date of the check for first premium, to February 13, the date on which the check was paid by the bank. However, it is unnecessary to resolve either of these disputes in the disposition of the case. It is undisputed that on February 3, Britt was informed by Dr. Bryant that, in his professional opinion, Britt was suffering from some type of kidney ailment, probably a kidney stone, which required hospitalization for additional tests. The ITT representative testified that this condition alone would have caused ITT to reject the first premium check, and thus the contract would not have been consummated.[2] Because of the failure of Britt to disclose that representations made in

1. According to the hospital records, the final diagnosis was:
   "Carcinoma of the abdomen either from the sigmoid or from the pancreas with multiple metastases throughout the peritoneal surfaces including obstructive lesions in the small bowel and in the distal ileum and obstructing lesions in the area of the cecum and ascending colon."

2. The assistant vice-president in charge of underwriting insurance for ITT testified that his duties as an underwriter are to select and classify risks for life insurance. His answer to the following hypothetical question shows that ITT would have rejected the premium check if it had known the state of Britt's health when payment was made:
   "Q. Let us assume on February 3, 1970, you knew that Mr. Britt had gone back to see Dr. Bryant and had complaints of pain in his back for four to five days; that further he had told Dr. Bryant that he had a twelve-pound weight loss for the past few months; and that also he hadn't been feeling well. Let us assume further that you knew that Dr. Bryant had continued examination of Mr. Britt, as a result of which he found that there was a certain tenderness in Mr. Britt's left flank. Let us assume further that this may or may not have suggested itself as kidney stones at the time, not taking into account anything else. Let us assume further that Dr. Bryant advised Mr. Britt to go into South Miami Hospital for tests. What would be your action or what would your action have been on February 9, when you received this check? . . . What would be or what would your action have been?
   "A. I wouldn't have accepted the check.
   "Q. Why not?
   "A. Because you would have to find out exactly what the problem was. It could be anything. It could be kidney disease and what not. Therefore, I would have to know he is not in as good health as he was at the time of the exam, so I would have to decline or I would have to send the check back and perhaps look at it later, after I found out what the diagnosis was."

his application for insurance were no longer true when the policy became effective on receipt of first premium payment, which changes if known by the insurance carrier would have caused it to refuse coverage, ITT is entitled to a judgment on the policy as a matter of law.

In the leading case of Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928), the issue before the Supreme Court was whether an applicant for life insurance owed a duty of informing the insurer of a material change in his health, which occurred subsequent to completion of the application for insurance but prior to the effective date of the policy. The Court answered in the affirmative and gave the following reasons for compelling full disclosure by the insured:

> "Insurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. [Citations omitted.]

> "Concededly, the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial. [Citations omitted.]

> "But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, [citations omitted] or, if a policy has been issued, it has a valid defense to a suit upon it. [Citations omitted]." 277 U.S. at 316, 317, 48 S.Ct. at 513, 514.[3]

3. The Florida Supreme Court approved principles of law similar to those in *Stipcich* in the case of Massachusetts Bonding & Ins. Co. v. Hoxie, 1937, 129 Fla. 332, 176 So. 480. *Hoxie* involved indemnity insurance policies where the insured had concealed the fact of an accident which had antedated reinstatement of policies previously lapsed for nonpayment of premiums. In *Hoxie* the Florida Supreme Court quoted with approval the following pertinent language from Whitley v. Peidmont & Arlington Life Insurance Co., 71 N.C. 480:

> "A Policy of Life Insurance is not binding until the premium is paid—such a clause being contained in the application. *And it is the duty of the assured to communicate to the Company, any material change in his health, in the interval between the application and the completion of the contract by the payment of the premium.*" (Emphasis supplied.) 176 So. 482.

Our subsequent decision in Wilkins v. Travelers Ins. Co., 5 Cir., 1941, 117 F.2d 646, is not to the contrary and the principles of *Stipcich* and *Hoxie* were properly distinguished on the facts.

The principles in *Hoxie* relative to the duty to disclose are in accord with leading authorities on insurance. Couch states that:

> "Known changes in conditions material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be divulged. That is, there is a continuing duty on the part of an applicant to disclose newly discovered matters arising between the application for, and the confirmation of, the contract where they come to the applicant's knowledge and render his former answers no longer true.

> \* \* \* \* \*

> "The mutual good faith which is required in a contract of life insurance will not permit a recovery where the insured intentionally withholds or conceals material changes in the condition of his health between the date of his examination by the insurer's physician and the delivery of the policy and

Britt thus had a duty to inform ITT of the impairment of his health and to disclose the details thereof. His failure to do so provided a valid defense to ITT in this suit on the policy.

Under Florida statutory provisions it is clear that considering the circumstances here there can be no recovery on the policy. Florida Statute 627.01081, F.S.A., provides:

"Representations in applications— All statements and descriptions in any application for an insurance policy or annuity contract, *or in negotiations* therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. *Misrepresentations, omissions, concealment of facts,* and *incorrect statements* shall not prevent a recovery under the policy or contract *unless* either:

"(1) Fraudulent; or

"(2) *Material either to the acceptance of the risk,* or to the hazard assumed by the insurer; or

"(3) *The insurer in good faith would either not have issued the policy* or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise." (Emphasis supplied.)

Appellee contends that Britt acted in good faith and that he had no knowledge of the seriousness of his illness. However, bad faith is only one of several grounds under the Florida statute above cited for vitiating an insurance policy.

The Florida Supreme Court held in Life Insurance Company of Virginia v. Shifflet, Fla., 1967, 201 So.2d 715, in answer to a certified question by this Court (see 5 Cir., 1966, 359 F.2d 501), the following:

"We hold misrepresentations in an application for insurance, material to the acceptance of the risk, *do not have to be made with knowledge of the incorrectness and untruth to vitiate the policy."* (Emphasis supplied.). 201 So.2d at 719.

The Florida Supreme Court further held:

"We accord the statute its plain and obvious meaning and hold recovery under the policy is precluded if the misrepresentation is material to the acceptance of the risk *or if the insurer in good faith would not have issued the policy* in the terms it was issued." (Emphasis supplied.) 201 So.2d at 719.

Knowledge of the assured of an actual misrepresentation is therefore unnecessary to vitiate the policy under the express holding of *Shifflet.* See McDonnell v. New England Mutual Life Insurance Company, 5 Cir., 1967, 380 F.2d 983; Wissner v. Metropolitan Life Insurance Company, 5 Cir., 1968, 395 F.2d 204; Allstate Insurance Company v. Winnemore, 5 Cir., 1969, 413 F.2d 858.

Appellee contends, however, that *Shifflet* has been repudiated by the Florida Supreme Court in National Standard Life Insurance Co. v. Permenter, Fla., 1967, 204 So.2d 206. The Court in *Permenter* by per curiam discharged a writ for lack of jurisdiction. In a separate concurring opinion, however, with which a majority of the Court agreed, Justice Ervin took the opportunity to state his

---

which is of such a nature as to affect his insurability, make him a hazardous risk and thus amount to a fraud on the insurer." 9 G.Couch, Couch on Insurance 2d, §§ 38.21–2 at 346–7. Appleman states the principle in the following language:

"The rule is that the insured must inform the company of any change in his physical condition of which he becomes cognizant after making application for the policy and prior to the delivery thereof. This duty to disclose any change of health exists regardless of whether there is a provision in the policy requiring such disclosure. 1 J. Appleman, Ins.L. & P., § 219 at 355.

views regarding the *Shifflet* decision. After expressing concern that the "pronouncement in Shifflet may be too sweeping in scope and might lend itself to application where literally to do so would work injustice," Justice Ervin said:

"An incorrect statement in order to be material and vitiate a policy must be one given by the insured in response to a question he understood or reasonably should have understood, or one which reasonably he could be expected to have sufficient information to answer or state he lacked knowledge to give a responsive answer.

\*   \*   \*   \*   \*   \*

"Each situation where an alleged misrepresentation or incorrect statement is advanced to vitiate a policy should be examined to determine whether under the particular circumstances the applicant reasonably could be held responsible for the incorrect statement and without fault on the part of the insurer."[4] 204 So.2d at 206, 207.

We need not decide whether the holding in *Shifflet* has been narrowed by what is apparently dicta in *Permenter*. Under either the express holding in *Shifflet*, or the case-by-case approach in *Permenter*, recovery under the policy would be precluded if the insured failed to disclose the impairment of his physical condition, known to him from information supplied by his physician, after making his written application and before payment for first premium was received. Nonrecoverability under the Florida statute is not predicated solely on misrepresentations made in the application. Any such misrepresentation, omission, concealment of fact or incorrect statement occurring at any time during the period of negotiations between the parties operates to preclude recovery if any of the conditions shown in Sections (1) through (3) of the quoted Florida statute exists. Until the first premium was paid the parties were still legally in the process of negotiating. Either party could have withdrawn from the contract prior to that date. On February 3, at least two days before the contract under its own terms could have become effective, Britt became aware of a serious change in his physical condition which rendered several of his statements relative to his health, no longer true. Britt was not only the potential insured under the policy. He was also an officer of appellee corporation, the owner-beneficiary of the policy, and in such capacity he personally signed the premium check dated February 5. His failure to inform ITT of his physical condition as he was aware of it on February 3 and later—whether such failure is characterized as a passive misrepresentation, omission or concealment of fact—vitiated the policy under the Florida statute inasmuch as his condition was one material to the acceptance of the risk and because of which condition ITT would have refused coverage at that time if it had known about it.

For the foregoing reasons we hold that ITT was entitled to a directed verdict as a matter of law and the District Court should have so found.

Reversed and rendered.

---

4. See also Tucker v. Travelers Insurance Company, Fla.App., 1970, 233 So.2d 198, in which the Florida Court of Appeal for the Fourth Circuit applied the more liberal standards suggested in *Permenter*.