Diane Adams **NUCCIO**

v.

**GENERAL HOST CORPORATION and John Doe.**

**Civ. A. No. 70-2375.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

May 31, 1971.

Forrest L. Bethay, Charles R. Maloney, New Orleans, La., for plaintiff.

Stephen L. Huber, New Orleans, La., for defendants.

HEEBE, District Judge:

Once again a federal court must reluctantly venture into that Pandora's Box of state-federal relations known as "substance and procedure" under the *Erie* doctrine,[1] this time to emerge with a jury trial for Diane Nuccio in her diversity suit for Louisiana workmen's compensation benefits.

The contents of this Pandora's Box are rooted in the seminal case of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938) which held that a federal court exercising diversity jurisdiction should apply the substantive law of the state in which it was sitting.

Encountering some difficulties in delineating substantive law from procedural law, the Supreme Court subsequently engrafted a more mechanical outcome-determination test onto the simplistic substance-procedure rule of *Erie*. In Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Supreme Court required the federal court to apply the state statute of limitations as "substantive" law since "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." At 109, 65 S.Ct. at 1470.

Reflecting the growing maturity in choice-of-laws analysis in general, the Supreme Court in 1958 shifted from these earlier simplistic tests to a more sophisticated interest analysis approach. In Byrd v. Blue Ridge Rural Elec. Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2

1. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

See generally, R. Cramton & D. Currie, Conflict of Laws, 761–799 (1968).

L.Ed.2d 953 (1958), the plaintiff sued for personal injuries, invoking the federal court's diversity jurisdiction. Defendant asserted that the plaintiff was his statutory employee; hence, plaintiff's exclusive remedy was workmen's compensation. The Supreme Court remanded the case and then considered whether, on remand, the district judge should submit the issue of plaintiff's status as a statutory employee to the jury, or whether he should follow the state rule which required the trial judge to decide the status issue. After recognizing that

"* * * the federal courts should conform as near as may be—in the absence of other considerations—to state rules even of form and mode where the state rules may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule," at 536–537, 78 S.Ct. at 900,

the Court considered the "affirmative countervailing considerations at work here." At 537, 78 S.Ct. at 901.

"[T]he inquiry here is whether the federal policy favoring jury decisions of disputed fact questions should yield to the state rule in the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court." At 538, 78 S.Ct. at 901.

The Court concluded that the "strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts," at 538, 78 S.Ct. at 901, outweighed the state policy goals favoring the submission of the status question to the judge alone.

This balancing-of-policy-goals approach was reaffirmed in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965): [2]

"[C]hoices between state and federal law are to be made not by application of any automatic, 'litmus paper' criterion, but rather by reference to the policies underlying the *Erie* rule." At 467, 85 S.Ct. at 1141.

■ The teaching applicable to the case at bar that we discern in this line of authority is that when a federal court exercising diversity jurisdiction is faced with a conflict between the state and federal rules governing the judge-jury relationship, he is to follow the federal rule unless the policy considerations supporting the state rule outweigh the policy considerations supporting the federal rule.

In this case, defendant moves to strike plaintiff's demand for a jury trial on the ground that Louisiana law prohibits jury trials in workmen's compensation cases. Unlike most states which provide administrative tribunals to process such claims, Louisiana workmen's compensation law provides that workmen's compensation claims be instituted in the civil courts. La.Rev.Stat. § 23:- 1311. Nowhere in the compensation scheme is a jury trial prohibited. However, La.Code Civ.Proc. Art. 1733, which generally distributes judge-jury functions, prohibits jury trials in a large number of civil proceedings, including workmen's compensation claims. It is this bar that defendant invokes. Plaintiff, on the other hand, asserts the strong federal policy in granting jury trials.

■ We agree at the outset that there is a strong federal policy favoring jury trials in civil matters. "The federal policy favoring jury trials is of historic

---

2. This balancing-of-goals approach has consistently been followed by the circuit courts. *See, e. g.*, Allstate Insurance Co. v. Winnemore, 413 F.2d 858 (5th Cir. 1969); Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061 (4th Cir. 1969), both finding the federal interests predominant. Allstate Insurance Co. v. Charneski, 286 F.2d 238 (7th Cir. 1960), finding the state interest predominant.

and continuing strength." Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); National Surety Corp. v. Musgrove, 310 F.2d 256 (5th Cir. 1962). This policy draws strong support from "the influence—if not the command—of the Seventh Amendment," *Byrd, supra,* 356 U.S. at 537, 78 S.Ct. at 901, and F.R.C.P. 38. "Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved." Simler v. Conner, *supra,* 372 U.S. at 222, 83 S.Ct. at 610.

■ To be balanced against this federal policy are the state interests underlying La.Code Civ.Proc. Art. 1733. Unable to find any authoritative legislative history or judicial exposition of this limitation on the right to a jury trial, we nevertheless conclude that this procedural article is supported by interests of outcome preference and judicial economy.

Outcome preference represents a legislative judgment that the outcome of a case will vary according to whether a judge or a jury decides it and that the legislature prefers the result it believes the judge will reach. This premise has, however, been repeatedly criticized. "It is only a rare case where the outcome would probably be determined by whether or not the case is submitted to a jury." Allstate Insurance Co. v. Winnemore, 413 F.2d 858, 860 (5th Cir. 1969). See, H. Kalven & H. Zeisel, The American Jury (1966), reporting that judges and juries generally reach the same decision on liability but that juries give somewhat higher damage awards.

In *Byrd,* the Court noted that the powers of a federal judge to comment on the evidence and to grant a new trial help make remote the possibility that outcome might vary. *Byrd,* 356 U.S. at 540, 78 S.Ct. 893. This is especially true here since the amount of damages to be awarded is fixed by a statutory schedule. La.Rev.Stat. § 23:-1221. Clearly, "* * * the likelihood of a different result * * * [in the case at bar is not] * * * so strong as to require the federal practice of jury determination of disputed factual issues to yield to the state rule in the interest of uniformity of outcome." *Byrd, supra,* at 540, 78 S.Ct. at 902.

■ We think that the stronger consideration for not having a jury lies in Louisiana's desire to conserve judicial resources by not providing costly and time-consuming jury trials in certain classes of cases. Here, the state's interest will remain unaffected regardless of whether plaintiff gets a jury trial in federal court. However important this consideration may be for Louisiana in conserving its judicial resources, we think it implicit in *Byrd* that it should certainly not bind a federal court from expending federal resources in furtherance of the federal policy of providing jury trials in civil matters that the Supreme Court has consistently championed.

Nor do we find anything in the Louisiana Workmen's Compensation Act to suggest that this rule was "announced as an integral part of the special relationship created by the statute." *Byrd, supra,* at 536, 78 S.Ct. at 900. As noted earlier, the bar against jury trials appears not in the statutes creating Louisiana's workmen's compensation scheme, La.Rev.Stat. § 23:1311, but in Article 1733 of the Code of Civil Procedure which generally prohibits jury trials in about twenty different instances. We hold this article to be "merely a form and mode of enforcing" the Workmen's Compensation Act rather than "a rule intended to be bound up with the definition of the rights and obligations of the

parties."[3] *Byrd, supra,* at 536, 78 S.Ct. at 900.

Judged by the "strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts," *Byrd, supra,* at 538, 78 S. Ct. at 901, we think the weak state interests must fall to the stronger federal interests. Accordingly, we hold that plaintiff is entitled to a jury trial in her diversity suit seeking benefits under Louisiana's Workmen's Compensation Act.

Defendant also moves to strike plaintiff's second cause of action which seeks recovery in tort in the event the Court finds the provisions of the Workmen's Compensation Act inapplicable. La.Rev. Stat. § 23:1035 makes compensation coverage of workers engaged in hazardous activities mandatory while § 23:1036 makes coverage for non-hazardous activities voluntary. Plaintiff seeks tort recovery only in the event the Court finds that her job was non-hazardous.

Defendant's motion to strike is based on La.Rev.Stat. § 23:1166 which estops carriers of workmen's compensation insurance from denying liability on the ground that the insured employment was non-hazardous. He reasons that since the insurer is estopped from denying that plaintiff's job is hazardous, her exclusive remedy is workmen's compensation, and therefore tort recovery is clearly prohibited. Bergeron v. New Amsterdam Cas. Co., 243 La. 108, 141 So.2d 832 (1961).

■ Defendant's motion to strike must fail for it has been improperly raised. It is not a proper motion to strike under F.R.C.P. 12(f) since it does not allege that a part of the complaint is "redundant, immaterial, impertinent, or scandalous * * *." It is well settled that a 12(f) motion to strike is not a proper way to dismiss a cause of action. See, C. Wright, Federal Practice and Procedure, § 1380 (1969) and especially cases cited in fn. 79.

■ Treating the motion as one for summary judgment, it fails for not being in compliance with F.R.C.P. 56. Specifically, defendant alleges that an insurance policy is in force but has not introduced the policy or any other supporting affidavits. All that is evident from the record is that plaintiff has sued her employer who denied she was engaging in hazardous work. Clearly, this material fact is in dispute and summary judgment on the merits would be improper.

Accordingly, it is the order of the court that defendant's motion to strike plaintiff's demand for a jury trial, be, and the same is hereby, denied.

It is further ordered that defendant's motion to strike plaintiff's second cause of action, be, and the same is hereby, denied.

---

3. *Compare* the North Carolina statute prohibiting deficiency judgments which the Supreme Court found to be bound up with the litigant's rights in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947) *with* the state rule in Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) which required the judge and not the jury to decide whether the plaintiff was a statutory employee under South Carolina's Workmen's Compensation law and the state rules governing the sufficiency of evidence to get a case to the jury in Planters Manufacturing Co. v. Protection Mutual Ins. Co., 380 F.2d 869 (5th Cir. 1967) and Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061 (4th Cir. 1969) all of which were found to be mere forms for enforcing rights.