Richardson *v.* Alta Life Insurance Company, Appellant.

Argued April 30, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Daniel H. Gibson,* with him *Rose & Eichenauer,* for appellant.

*L. Pat McGrath,* of *McGrath, McGrath & McGrath,* for appellee.

OPINION BY HIRT, J., September 9, 1943:

Defendant company insured the life of George Brady in two industrial policies, one dated February 6, 1933, for $300 and the other, June 4, 1934, for $200. The insured made his home with plaintiff, his cousin, and she was the beneficiary of both policies. He died on January 22, 1935 from pulmonary tuberculosis. Defendant contested payment on the ground of false and fraudulent representations in the applications for the insurance, attached to the policy in each instance. The jury found for plaintiff for the full amount of both policies and judgment was entered on the verdict. The error assigned is the refusal to limit recovery to a return of the premiums paid.

The undisputed records of Allegheny General Hospital, admitted in evidence, indicate that insured was hospitalized for two months in 1931 for streptococcic lobar pneumonia. And that he again appeared at the hospital on March 8, 1932, complaining of pain in the upper left chest and of difficulty in breathing. He had lost weight. He had a severe cough and had "coughed up a lot of blood 2 weeks ago." Tuberculosis of the right lung was suspected and he was requested to return at intervals for observation. He received additional clinical examinations on six other days during March 1932 and treatment on three occasions in April, 1932. He reported about once each month thereafter until the end of the year. On January 20, 1933, the very day of the application for the first policy, the hospital record indicates that he appeared at the clinic complaining of weakness with dyspnoea on exertion and a severe cough. Coronary disease was suspected and digitalis was prescribed. He applied for the second policy on April 27, 1934. Beginning in August 1934 there was positive evidence of involvement of the lungs and on September 7, 1934, x-ray showed active tuberculosis. Two weeks later he was committed to the mu-

nicipal hospital at Leech Farm where he remained until his death.

Both policies provide that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." Specifically, in each instance, application was made for the insurance on the basis of the information supplied. We must assume that the contracts were made upon his representations. *N. Y. Life Ins. Co. v. Brandwene*, 316 Pa. 218, 172 A. 669.

The applications signed by decedent, were made on the same printed form supplied by the company. The statements are numbered and among them the following appear in the printed language of the applications: "12(a) I am free from all injury, DO NOT now have, nor have I ever had ...... heart trouble, consumption ...... spitting of blood, habitual cough ...... nor any other ailment or infirmity, except ...... 12(e) I have never had tuberculosis nor am I, or have I been, in close contact with anyone having tuberculosis, except ...... 13. I have NOT been disabled nor had any medical or surgical treatment or consulted or been treated by a physician during the past FIVE YEARS, except ......" On the first application there is a ⱽ mark following the word 'except' in each instance without any qualification, and on the second application, the space is entirely blank. We do not agree that these statements are any the less representations of the applicant because of the lack of comment after the word 'except' or because of the check marks appearing on the one or their absence on the other. The above printed statements were all in declarative form and in the first person, (with the exception of part of 2., relating to marital status, which was in the form of questions admittedly properly answered). There was ample space in each instance following the word "except", inviting comment if the statement did not reflect the

facts. Since the decedent signed the application without qualifying the above quoted material statements, he adopted them as his representations, in the form in which they appear in the applications.

The policies were not solicited by the same insurance agent. The writing on the first application, other than the signature of the insured, was that of defendant's agent, W. Haller, and on the second, the writing of its agent, H. Wilstein. There is no evidence that the insured was not questioned as to the subject matter of every statement contained in the first application or that anything was written into it after signing. Plaintiff however testified that she was in her kitchen, an adjoining room, when the second policy was solicited and that no questions were asked the insured and that application was signed by him in blank. If her testimony is true, the handwriting on the application was inserted by the agent after it was signed. It was the view of the lower court that this testimony carried the case to the jury on *both* policies and that the verdict may not be disturbed on the authority of *Stein v. New York Life Ins. Co.*, 319 Pa. 225, 179 A. 589. In our view that case is not applicable, much less, controlling. The circumstances here do not, as in the *Stein* case, rebut the inference that insured deliberately applied for the policies knowing that he was not an insurable risk. The information and statements of the insured contained in the second application are identical in material respects with those in the first application, which are not questioned as representations made by the insured. Nothing material to the risk written by the agent in the second application was untrue. According to plaintiff's testimony insured was not questioned as to previous serious illnesses nor treatement by physicians. No fraud on the part of defendant's agent was shown. The fraud was that of the applicant in failing to inform the agent of previous disability and treat-

ment by physicians qualifying his statements to the contrary in the application.

The hospital record in this case was competent documentary evidence of fraudulent misrepresentations which induced the policies. The record meets the requirements of admissibility as evidence: the various entries were made contemporaneously with the successive appearances of the insured at the hospital; there was no reason or motive for falsification and they appear to have been made at the direction of the examining physician. The case therefore is controlled by the rule of *Evans v. Penn Mutual L. Ins. Co.*, 322 Pa. 547, 186 A. 133; *Bailey v. Pacific Mut. L. Ins. Co.*, 336 Pa. 62, 6 A. 2d 770; *Freedman v. Mut. Life Ins. Co. of N. Y.*, 342 Pa. 404, 21 A. 2d 81. Since falsity and fraud affirmatively appear from the uncontradicted documentary evidence of the hospital record, defendant was entitled to a directed verdict in its favor except for the amount of the premiums paid. *Glaser v. Metropolitan Life Ins. Co.*, 139 Pa. Superior Ct. 261, 11 A. 2d 558; *Kasmer v. Metro. Life Ins. Co.*, 140 Pa. Superior Ct. 46, 12 A. 2d 805; *Anastasio v. Met. Life Ins. Co.*, 149 Pa. Superior Ct. 414, 27 A. 2d 510.

This result is not affected by the fact that the insured was illiterate and could not read. The applicable rule is thus stated in *Prevete v. Metropolitan L. Ins. Co.*, 343 Pa. 365, 22 A. 2d 691: "Since the pronouncement of Chief Justice GIBSON, in Greenfield's Estate, 14 Pa. 489, 496, that if a party who can read 'will not read [what is] put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law.' "

Reversed, and it is ordered that the judgment be reduced to the amount of premiums paid.