343 So.2d 862 (1976)
INDEPENDENT FIRE INSURANCE COMPANY, Appellant,
v.
Norman Lee HORN and Ceola Horn, His Wife, Appellees.
No. AA-137.
District Court of Appeal of Florida, First District.
December 15, 1976.
Rehearing Denied March 24, 1977.
*863 Andrew G. Pattillo, Jr., of Pattillo, MacKay & McKeever, P.A., Ocala, for appellant.
Gregory E. Tucci, of Blowers, Walkup, Berk & Tucci, Ocala, for appellees.
SMITH, Judge.
Independent appeals from a circuit court judgment awarding fire insurance benefits of $2,000 and attorney's fees to appellees Horn, whose five-room frame dwelling was destroyed by fire. Independent paid the Horns $1,000 for loss of insured contents but resisted paying benefits for the dwelling itself because of asserted misrepresentations in the printed application completed by an insurance agent and signed by Ms. Horn. Independent tendered repayment of the premiums paid for coverage on the dwelling.
In the blank where other insurance on the dwelling was to be described, the word "none" was written. A space in the application following the statement,[1] "the property described is free of any mortgage, loan deed, title retention contract or other financial encumbrance except as follows," was left blank. In fact, the property was encumbered by the Horns' mortgage to Gulf Shore Dredging Company, which maintained a $6,000 fire insurance policy issued by American Security Insurance Co. American paid benefits in due course to the mortgagee.
Following a nonjury trial, the trial court found that Independent, "realizing the type of persons the HORNS were and are now, failed to ascertain sufficient information from the HORNS relative to `other insurance' and whether or not said property to be insured was encumbered by a mortgage when taking the insurance application"; and, further, that Independent would in any event have issued the policy notwithstanding its knowledge of the undisclosed facts, at the same rate and for the same benefits.
The Horns, who are not educated people, of course knew their dwelling was mortgaged when they applied for Independent's policy. They testified they also knew the mortgagee insured the dwelling when they purchased it in 1965, and for 2 years thereafter, but denied knowledge of other insurance when they applied for the Independent policy in October 1972. Substantial evidence therefore supports the trial court's finding that "they were unaware of the existence of other insurance... ."
There is less support in the record for the trial court's finding that Independent, had it known the facts, would have issued the same policy anyway. Independent's uncontradicted evidence was that, to avoid overinsuring the property, it "in most cases ... just simply reject[s] the policy if it already has insurance on it," and that "we normally assume" there is other insurance if the property is mortgaged. If the application reveals a mortgage, Independent inquires of the mortgagee concerning the existence and amount of other insurance.
The question before us, therefore, is whether the policy was vitiated by Ms. Horn's submission of an innocent but incorrect answer to the inquiry concerning insurance or by her failure to reveal the mortgage in response to a pertinent inquiry.
In Life Ins. Co. of Virginia v. Shifflet, 201 So.2d 715 (Fla. 1967), the Supreme Court held that misrepresentations in an application for insurance, material to acceptance of the risk, vitiate the policy even if made by an applicant without knowledge of the representations' incorrectness. That holding was questioned in National Standard Life *864 Ins. Co. v. Permenter, 204 So.2d 206 (Fla. 1967), in which the Court discharged certiorari for lack of conflict jurisdiction but added, in Mr. Justice Ervin's concurring opinion which was joined in by three other justices, that incorrect answers on an insurance application should not invalidate the policy in cases in which (1) the applicant in good faith makes "an erroneous expression of opinion or judgment" or (2) the applicant misunderstands an inquiry which is "couched in language or refer[s] to subjects and special fields beyond his or their understanding." 204 So.2d at 207. Mr. Justice Ervin cautioned that this more lenient view of representations in insurance applications ought not to prevail if the applicant carelessly made positive statements of which he had no knowledge and should reasonably have revealed he was without sufficient information to answer properly, nor if the applicant incorrectly answered a question he "understood or reasonably should have understood" or concerning which the applicant could reasonably have been expected to reveal his lack of knowledge. In Garwood v. Equitable Life Assur. Soc. of U.S., 299 So.2d 163 (Fla.App.3d DCA 1974), cert. den., 321 So.2d 553 (Fla. 1975), the District Court of Appeal adopted Mr. Justice Ervin's views as expressed in Permenter and held Garwood's policy was invalidated because he
"... did have sufficient information to have answered the specific questions on the insurance application differently from the answers which in fact he gave." 299 So.2d at 165.
Although Ms. Horn's signed application contained a positive statement that there was no other insurance on the property, the trier of the facts effectively found she did not know other insurance was in force and, because of her general lack of understanding, she could not reasonably have been relied on to reveal her lack of knowledge concerning the mortgagee's insurance. Her signing and submitting an application that erroneously answered "none" to the inquiry concerning other insurance does not, therefore, vitiate the policy.
Independent's inquiry concerning mortgages was motivated at least in part by its experience that a mortgagee "normally" insures the property to the extent of its security interest. Independent was therefore entitled to a disclosure of the Gulf Shore mortgage in the space provided in the application for that purpose. A misrepresentation that there was no mortgage, a fact material to acceptance of the risk, would normally vitiate a policy issued in response to the application.[2] Even assuming Ms. Horn was fully responsible for omitting to answer the inquiry concerning mortgages,[3] however, there was no misrepresentation, only a failure to answer the question or to complete the dangling statement. A failure to answer or fill in the blank is not equivalent to answering in the negative. Absent an intent to deceive, of which the trial court found none, Ms. Horn's incomplete response to questions in the application gave Independent adequate reason to reject the application, but no right to disclaim coverage under a policy once issued. See Fisher v. Missouri State Life Ins. Co., 97 Fla. 512, 121 So. 799 (1929); 9 G. Couch, Cyclopedia of Insurance Law § 38:68 at 382-83 (2d ed. 1962); 4 J. Appleman, Insurance Law and Practice § 2512 at *865 610-611 (1969); 16A id. § 9252 (1968). See also 12 id. § 7356 (1943).
AFFIRMED. Fees for the appellate services of the Horns' attorney will be awarded by the trial court.
BOYER, C.J., and MILLS, J., concur.

ON PETITION FOR REHEARING
SMITH, Judge.
As indicated in my earlier opinion in behalf of the court, the application signed by Ms. Horn contained the following declaratory statement:
"It is warranted that the property described is free of any mortgage, loan deed, title retention contract or other financial encumbrance except as follows:
_____________________________________________
Mortgagee Name
_____________________________________________
Mailing Address  Street or P.O. Box
_____________________________________________
City State Zip Code
.....
"I declare that the statements and answers above are complete and true and are written strictly in accordance with my directions."
Independent's petition for rehearing is correct in calling attention to the unarticulated holding, in the last paragraph of the opinion, that an applicant's failure to fill in a blank space following a declaratory statement is equivalent to an applicant's failure, in such a blank, to answer a question, and that neither is a misrepresentation. Independent's petition is also correct in suggesting that Couch's treatise discusses the subject, not in Section 38:68 to which I cited, but in Section 38:71 which states:
"[W]here the question is in the form of a positive statement, followed by a blank space provided for exceptions, leaving such space blank is equivalent to a statement by the applicant that there are no exceptions." 9 G. Couch, Cyclopedia of Insurance Law and Practice, Section 38:68 at 388 (2d ed. 1962).
At our invitation counsel have submitted additional briefs. Courts in other jurisdictions have indeed drawn a distinction between an applicant's failure to answer a printed question, which is not considered a misrepresentation, and his failure to list exceptions to a printed declaratory statement, which is. In formal logic the distinction is unquestionable; in the practicalities of preparing, submitting and accepting insurance applications, the difference is less substantial. In every case to which we have been cited and which we have found drawing the distinction to the applicant's detriment, there remained for the trier of fact a question whether the false statement deduced from the printed declaratory statement was intentionally or fraudulently made. Moriarty v. Metropolitan Ins. Co., 180 Ky. 207, 202 S.W. 630 (1918); Metropolitan Life Ins. Co. v. Trunick's Adm'r, 246 Ky. 240, 54 S.W.2d 917 (1932); Guarraia v. Metropolitan Life Ins. Co., 90 N.J.L. 682, 101 A. 298 (1917); Richardson v. Alta Life Ins. Co., 153 Pa.Super. 310, 33 A.2d 783 (1943); Becker v. Kansas Cas. & Sur. Co., 105 Kan. 99, 181 P. 549 (1919). That ameliorating question of intent is absent in Florida, where false material statements on the application vitiate the policy regardless of intent. Life Ins. Co. of Virginia v. Shifflet, 201 So.2d 715 (Fla. 1967).
We believe that in Florida the rule is and should be that, absent intent to defraud or conceal, an insurance applicant's failure to fill out, check or otherwise manually indicate in the blank his adoption or acquiescence in a printed declaratory statement in an application is equivalent to applicant's failure to answer a question in a blank space provided. In either case, still assuming no fraudulent intent on the applicant's part, the insurer accepts the application at its risk. Phrased in terms of Mr. Justice Ervin's opinion in National Standard Life Ins. Co. v. Permenter, 204 So.2d 206 (Fla. 1967), the insurer's acceptance of such an application constitutes fault contributing to the alleged misrepresentation or incorrect statement. The policy is not vitiated by such circumstances.
*866 The prayer of the petition for rehearing is
DENIED.
BOYER, C.J., and MILLS, J., concur.
NOTES
[1] The application described the quoted statement as a warranty but § 627.409(1), F.S. 1975, provides in part: "All statements and descriptions in any application for an insurance policy ... shall be deemed to be representations and not warranties." A misrepresentation in the application invalidates the policy only in the circumstances described by the statute, infra n. 2.
[2] Sec. 627.409(1) also provides: "Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy ... unless either:

.....
(b) Material either to the acceptance of the risk . ..; or
(c) The insurer in good faith would ... not have issued the policy or contract ... if the true facts had been made known to the insurer as required ... by the application... ."
[3] Ms. Horn testified only that she did not "remember" the agent orally asking questions concerning a mortgage. That testimony was not competent to prove the negative. See Gibbs v. Amer. Nat. Bank of Jacksonville, 155 So.2d 651, 654 (Fla. 1st DCA 1963), cert. disch., 170 So.2d 821 (Fla. 1964). The agent himself did not testify.