**Tony GARCIA and Martha Garcia, Plaintiffs-Appellants,**

v.

**AETNA CASUALTY AND SURETY COMPANY, a foreign corporation doing business in the State of Florida, Defendant-Appellee.**

**No. 79-2470.**

United States Court of Appeals, Fifth Circuit.

Unit B

Aug. 19, 1981.

---

Ralph W. Rinehart, Tampa, Fla., for plaintiffs-appellants.

Fowler, White, Gillen, Boggs, Villareal & Banker, Diana L. Fuller, W. Donald Cox, Tampa, Fla., for defendant-appellee.

Before VANCE, HATCHETT and AN-DERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This is a diversity of citizenship action in which the appellants, Tony and Martha Garcia, sought to recover the proceeds of a fire insurance policy covering their home and furnishings issued by the appellee, Aetna Casualty and Surety Company ("Aetna"). At trial Aetna raised a number of defenses which are reduced to these three: (1) that the Garcias materially misrepresented the value of their house in their application for insurance by overstating the number of square feet in the dwelling; (2) that the Garcias misrepresented the loss of personal property by the fire in their proof-of-loss statement; and (3) that the Garcias intentionally burned or caused to be burned

the insured dwelling. The jury found that the Garcias had materially misrepresented the value of the house in their application for insurance, and the district court entered judgment in favor of Aetna.[1] The Garcias appealed. Among the issues raised by the Garcias on appeal is the contention that the district court erred in admitting into evidence the fact that a building leased by the Garcias had been destroyed by fire one year before their house was burned. We find that the district court erred in admitting the evidence of the prior fire and reverse and remand for a new trial.

On April 6, 1976, the Garcias purchased from Aetna through its agent, Davis Brothers Insurance Agency, a homeowner's policy which provided coverage (including fire loss) in the amount of $50,000 on the dwelling. Prior to the issuance of the policy, Mrs. Garcia had several conversations with Ms. Wanda Trasorraz, an employee of the Davis Brothers agency. At first, Mrs. Garcia stated that the value of the dwelling was $40,000. Ms. Trasorraz asked Mrs. Garcia to determine the dimensions of the enclosed area of the house to calculate the square footage in order that Ms. Trasorraz could estimate the value of the home. After several phone conversations, Mrs. Garcia finally reported that the house contained 2,110 square feet plus 595 feet in a storage room and half bath which she said was being added to the house. Although Ms. Trasorraz testified that she had instructed Mrs. Garcia to count only the enclosed areas of the house, Mrs. Garcia included the carport and porch area—neither of which is enclosed—in her calculations. It appears that the 595 foot addition was no more than a slab of concrete with the plumbing roughed-in. Based on these figures, Ms. Trasorraz calculated that the house should be insured for approximately $61,000. Mrs. Garcia thought that this was too much and insisted that she could afford no more than $50,000. Aetna's witnesses testified that the house contained only 1,776 square feet

and should have been insured for about $37,000.

On September 10, 1976, the dwelling and its contents were totally destroyed by fire. The fire occurred while Mr. Garcia was incarcerated in jail and while Mrs. Garcia and their children were staying with Mr. Garcia's parents. Aetna's evidence showed without much dispute that appellants were in serious financial straits due to the attorneys fees and heavy bail arising from the pending criminal charges against Mr. Garcia at the time of the fire. Hector Carbonell, a relative of Mrs. Garcia, was charged with arson of the house and later pleaded *nolo contendere* to the charges. Under these suspicious circumstances, Aetna denied coverage and appellants filed this suit.

Approximately one year before the fire, a building leased by the Garcias for their crate business was also destroyed by fire. During cross-examination of Mrs. Garcia, Aetna's attorney elicited this fact over her attorney's objection. Appellants claim that the district court erred in admitting this evidence. Although this is a diversity of citizenship case where Florida law provides the substantive law, "the Federal Rules of Evidence govern the admissibility of evidence in the federal courts." *Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 609 F.2d 820, 821 (5th Cir. 1980). The purpose for which the evidence was admitted is unclear from the trial court's ruling. Aetna asserts two grounds to support the admissibility of the evidence. First, that the evidence was admissible to support Aetna's defense that the Garcias intentionally burned their home. More specifically, Aetna contends that the evidence was admissible to establish intent, motive, or absence of mistake or accident. Second, Aetna argues that the evidence was admissible to show that the Garcias were familiar with insurance and insurance recovery in general.

---

1. The jury made no findings with respect to the other two defenses because, for some unexplained reason, the special verdict form instructed the jury that, if they found for Aetna on the first defense, misrepresentation of the value of the dwelling, they should not consider the other defenses.

With respect to Aetna's argument that the previous fire evidence was admissible to show intent or motive, the evidence must be tested by the standard for admission of prior similar conduct. Fed.R.Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of prior similar acts is subject to Fed.R.Evid. 403's limitation:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), we adopted a two-step rule:

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.

*Id.* at 911 (footnote omitted).

■ The previous fire might be relevant to motive or intent on the part of the Garcias, and thus relevant to an issue other than character as required by the first step. However, as part of the first *Beechum* step, there must be, as a predicate for the admission of such extrinsic offense evidence, proof demonstrating that the Garcias did in fact commit the extrinsic offense, i. e., that the Garcias did in fact take part in the previous burning. That proof must be such that a jury could reasonably find that the Garcias did take part in the previous burning. *United States v. Beechum*, 582 F.2d at 912–13. Under any standard of proof, Aetna's proof falls short. Aetna introduced absolutely no evidence that showed the Garcias had anything to do with the previous fire. Therefore, Aetna has failed the *Beechum* test, and the admission of the previous fire evidence cannot be supported on the basis of its relevance to intent or motive.

■ The second ground asserted by Aetna to support the admissibility of the evidence is that the evidence was admitted to demonstrate the Garcias familiarity with insurance and recovery. We find no merit in this argument. The *Beechum* test is equally applicable here where the extrinsic offense evidence is offered to show knowledge of insurance matters. For the reasons discussed above, Aetna has not satisfied the *Beechum* test, and therefore it was error to admit the evidence.

■ On remand, it is of course possible that Aetna will offer evidence sufficient to satisfy the first *Beechum* step. In that event, the court below will be required to address the second *Beechum* step, i. e., whether the evidence possesses probative value, with respect to the legitimate purpose for which it is introduced, that is not substantially outweighed by its undue prejudice and whether the evidence meets the other requirements of Rule 403.[2]

---

**2.** Appellants also complain that the district court erred in letting the defense of misrepresentation go to the jury. Specifically, they argue that a misrepresentation must be willful to vitiate the policy and that there is insufficient evidence of willfulness. It does not appear that appellants have preserved the issue of sufficiency of the evidence. Appellants failed to raise this objection at several opportune times during the trial. First, at the close of the evidence, the trial court specifically gave appellants' attorney an opportunity to make a mo-

tion with respect to the three defenses. Appellants' attorney declined to make a motion to strike the defense of misrepresentation. (R. vol. IV at 241). Second, appellants' attorney did not object to the inclusion of the defense in the special verdict form when the court and counsel were discussing the form. (R. vol. IV at 245–248). Third, appellants' attorney did not object to the court's instructing the jury on the defense—he did not object to the content of the instruction. In fact, he submitted a proposed instruction on the defense which was not

Accordingly, the judgment of the district court is reversed, and the matter is remanded for a new trial.

REVERSED AND REMANDED.

HATCHETT, Circuit Judge, specially concurring:

While I concur in the majority's determination that the trial court erred in admitting evidence of a previous fire, I cannot subscribe to the comments in footnote two suggesting that a negligent misrepresentation will vitiate a policy.

substantially different from the charge actually given. Finally, although appellants did file a motion for a partial summary judgment on the misrepresentation defense prior to trial, they do not assert as error on appeal the denial of this motion.

In any event, appellants are incorrect in their assertion that only willful misrepresentations will avoid the policy. *Life Insurance Co. of Virginia v. Shifflet*, 201 So.2d 715 (Fla.1967), stated a general rule that even an innocent, material misrepresentation may vitiate a policy under Florida law. However, this broad statement has been tempered by the language of Justice Ervin's concurring opinion in *National Standard Life Insurance Co. v. Permenter*, 204 So.2d 206 (Fla.1967), with which a majority of the Supreme Court of Florida apparently agreed. Florida's intermediate courts of appeal have applied the *Shifflet* test as narrowed by *Permenter. See Independent Fire Insurance Co. v. Horn*, 343 So.2d 862 (Fla.App.1976); *Garwood v. Equitable Life Assurance Society of the United States*, 299 So.2d 163 (Fla.App. 1974), *cert. denied*, 321 So.2d 553 (Fla.1975). This court has expressly held that Justice Ervin's concurring opinion in *Permenter* does narrow the *Shifflet* holding. *Hyman v. Life Insurance Co. of North America*, 481 F.2d 441, 444 n.3 (5th Cir. 1973). Accordingly, in dealing with this issue on retrial, the district court shall utilize the *Shifflet* rule as narrowed by *Permenter*. Under the narrowed test, it is clear that a mere innocent misrepresentation is not sufficient to vitiate a policy. On the other hand, it is also clear that a willful misrepresentation, or a reckless misrepresentation, is sufficient to vitiate a policy. As we read the several cases, it would seem that a misrepresentation which might be deemed negligent, but nevertheless was excusable under all the circumstances, would not be sufficient to vitiate the policy. On the other hand, a negligent misrepresentation, which under all the circumstances was not excusable, would vitiate the policy. The cases suggest a case-by-case approach, examining all the particular circumstances of each case. The cases also suggest that an important

As I interpret *Life Insurance Co. of Virginia v. Shifflet*, 201 So.2d 715 (Fla.1967), as narrowed by *National Standard Life Insurance Co. v. Permenter*, 204 So.2d 206 (Fla. 1967), only a material willful or reckless misrepresentation will vitiate an insurance policy. No support exists for the proposition that a negligent material misrepresentation will invalidate a policy. Thus, on remand the jury should be instructed that only a material willful or reckless misrepresentation will vitiate a policy under Florida law.

factor should be whether or not the insurance company itself is at fault in the matter, for example, if the application question were couched in language or referred to a subject beyond the understanding of the average person. As applied in the instant case, the proper test might be that the insured's representation concerning the number of square feet would not vitiate the policy solely because the representation was incorrect. Something more than a mere innocent misrepresentation is required. If it is found, under all the particular circumstances, that the insured here either did or should have understood the directions given by the insurance company's agent concerning the calculation of the number of square feet, and that the insured reasonably could be held responsible for the incorrect statement, and that the insurance company's agent was without fault in the matter, then the misrepresentation would suffice to vitiate the policy.

Along similar lines, appellants complain of the trial court's refusal to give their requested jury instruction to the effect that Aetna must prove that any "misrepresentation was made with actual intent to deceive *or* that the misrepresentation increased the risk of loss." (Emphasis added). Because the requested charge is not substantially different from the charge *actually* given, and because appellants failed to except to the trial court's charge on this matter, any error in the charge has not been preserved. Upon retrial of this case on remand, the district court will fashion a charge consistent with the immediately preceding paragraph.

Finally, appellants devote much effort to their argument, stated in various ways, that the insured is under a duty to inspect the property before it issues a policy. Appellants are clearly wrong. Under Florida law, the insurer has a right to rely upon the applicant's representations and is under no duty to inquire further. *See New York Life Ins. Co. v. Nespereira*, 366 So.2d 859 (Fla.App.1979); *cf. Talley v. National Standard Life Ins. Co.*, 178 So.2d 624 (Fla.App. 1965) (the fact that insurer does make an investigation does not relieve applicant of the obligation to speak the truth).